IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Melissa Cole, | C/A No. 3:09-1301-CMC-PJG |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Lexington-Richland School District 5, | |
| Defendant. | |

The plaintiff, Melissa Cole, filed this employment discrimination case against her former employer, Lexington-Richland School District 5, pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII"). The crux of Cole's Complaint is her allegation that she was disparately disciplined compared to male employees who engaged in similar alleged misconduct. This matter is before the court on the School District's motion for summary judgment. (ECF No. 35.) Having carefully considered the parties' submissions and the applicable law, the court finds that the defendant's motion should be denied.

## BACKGROUND

Viewed in the light most favorable to Cole, the following facts appear pertinent to the resolution of the School District's motion. Cole is a former principal of a District 5 elementary school. It is undisputed that Cole had a good working relationship with the District Superintendent, Scott Andersen, and a less harmonious professional relationship with Lee Bollman, the Chief Instructional Officer. Among his other duties, Bollman, who reported directly to Superintendent Andersen, supervised Cole and the other principals in the District. In the spring of 2008, rumors began to circulate that Cole and Superintendent Andersen were

having an illicit affair.  Members of the Board of Trustees of School District 5 met with Cole and Andersen separately regarding the rumors.  Both Cole and Andersen denied that their relationship was inappropriate.

In July of 2008, Andersen, who had a renewable three-year contract as superintendent, informed the Board of his wish to resign.  A negotiated settlement was reached and was finalized on July 31, 2008.  This agreement included severance pay and permitted Andersen to resign effective August 1, 2008, allowing him to maintain health insurance benefits for himself and his family for an additional month.

Also on July 31, 2008, Cole was informed by letter signed by Bollman and Angela Bain, Chief Human Resources Officer, that she was being placed on administrative leave.  Bollman was charged with investigating Cole regarding two areas:  the rumors about her and Andersen's relationship, and the management of her school.  Cole was not informed as to the reason why she was being placed on administrative leave.  Bollman and Bain then met with Cole and questioned her extensively about her relationship with Andersen.  They asked no questions about her management of the school.  On August 18, the School District's attorney sent Cole's attorney a letter presenting Cole with two "alternative proposals," both of which required a letter of resignation from Cole by 4:00 p.m. that day.  The first option required Cole's resignation to be immediately effective.  The second alternative provided for an effective resignation date of August 25—a week later—and a neutral reference, but required Cole to sign a release of any claims against the District.  The letter stated that if Cole failed to resign under either of those sets of terms, the new superintendent, Dr. Herbert Berg, would recommend her termination to the Board at a special meeting on the following day.  The record suggests that neither

PJG

Superintendent Berg nor any Board member involved authorized this ultimatum to be presented to Cole.

Cole resigned prior to the 4:00 p.m. deadline. She received no severance pay and her resignation was effective immediately. The State Department of Education was notified of Cole's resignation and a letter was placed in her file that she was asked to resign because she was dishonest with the Board about her relationship with Andersen.

## DISCUSSION

**A.      Summary Judgment Standard**

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported Motion for Summary Judgment; the requirement is that there be no *genuine* [dispute] of *material fact*." Ballinger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987). A fact is "material" if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. Id. at 257.

In discrimination cases, a party is entitled to summary judgment if no reasonable jury could rule in the non-moving party's favor. Dennis v. Columbia Colleton Med. Ctr., Inc., 290



F.3d 639, 645 (4th Cir. 2002). The court cannot make credibility determinations or weigh the evidence, but the court should examine uncontradicted and unimpeached evidence offered by the moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The court must determine whether a party's offered evidence is legally sufficient to support a finding of discrimination and look at the strength of a party's case on its own terms. See id. at 148 (stating that "[c]ertainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory").

**B.      Burden Shifting Framework**

A plaintiff may demonstrate discrimination through direct or circumstantial evidence. When direct evidence is lacking, as in this case, a plaintiff may produce circumstantial evidence and proceed under the McDonnell Douglas burden-shifting framework. Warch v. Ohio Casualty Ins. Co., 435 F.3d 510, 520 (4th Cir. 2006); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). Pursuant to this framework, once the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to produce evidence of a legitimate, nondiscriminatory reason for the adverse action. Merritt v. Old Dominion Freight, 601 F.3d 289, 294 (4th Cir. 2010) (Title VII). The defendant's burden "is a burden of production, not persuasion." Reeves, 530 U.S. at 142. Once a defendant meets this burden by producing affidavits or testimony demonstrating a legitimate, nondiscriminatory reason, " 'the McDonnell Douglas frame-work—with its presumptions and burdens—disappear[s], and the sole remaining issue [is] discrimination *vel non*.' " Id.

In other words, if the defendant meets the burden to demonstrate a legitimate, nondiscriminatory reason, the plaintiff must demonstrate by a preponderance of the evidence that



the proffered reason was " 'not its true reason[], but [was] a pretext for discrimination.' " Merritt, 601 F.3d at 294 (quoting Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981)). Accordingly, the plaintiff's burden of demonstrating pretext " 'merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination.' " Merritt, 601 F.3d at 294 (quoting Burdine, 450 U.S. at 256) (alterations in original); see also Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 319 (4th Cir. 2005). To meet this "merged" burden, the employee may prove by a preponderance of the evidence that the decision maker's affidavit is untrue or that the employer's proffered explanation is unworthy of credence. Burdine, 450 U.S. at 256.

"[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, *may* permit the trier of fact to conclude that the employer unlawfully discriminated." Reeves, 530 U.S. at 148. However, "if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred," summary judgment is appropriate. Id. Accordingly, the court must evaluate "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." Id. at 148-49. "Notwithstanding the intricacies of proof schemes, the core of every [discrimination] case remains the same, necessitating resolution of the ultimate question of . . . whether the plaintiff was the victim of intentional discrimination." Merritt, 601 F.3d at 294-95.

PJG

C.  **Comparators**

To establish a *prima facie* case of discrimination based on disparate discipline, a plaintiff must show: (1) that she engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin; and (2) that disciplinary measures enforced against her were more severe than those enforced against the other person. Lightner v. City of Wilmington, 545 F.3d 260, 264-65 (4th Cir. 2008). Similarly, to establish a *prima facie* case of Title VII gender discrimination with regard to a disciplinary discharge,[1] Cole must show (1) that she is a member of a protected class; (2) that she was qualified for the job and that her job performance was satisfactory; (3) that she was discharged; and (4) that other employees outside the protected class were retained under similar circumstances. Bryant v. Bell Atl. Maryland, Inc., 288 F.3d 124, 133 (4th Cir. 2002); Hughes v. Bedsole, 48 F.3d 1376, 1383 (4th Cir. 1995).

To prevail on either theory, Cole must show that male employees who were similarly situated to her were treated more favorably. See Lightner, 545 F.3d at 264-65 (requiring a plaintiff to show that she engaged in prohibited conduct *similar* to that of a person of another race, color, sex, religion, or national origin); Bryant, 288 F.3d at 133 (requiring a plaintiff to demonstrate that other employees outside the protected class were retained under *similar* circumstances). Generally, to be similarly situated and thus permit a valid comparison, the employees outside the protected class must have dealt with the same decision maker, been subject to the same standards, and have engaged in the same conduct without mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

---

[1] The plaintiff asserts that she was constructively discharged and the defendant does not offer argument or evidence disputing Cole's evidence that she was constructively discharged.



Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (Title VII & ADEA) (defining "similarly situated").[2]

This case squarely presents the question of precisely how similar another employee must be to permit a valid comparison for purposes of alleged disparate discipline. The United States Court of Appeals for the Fourth Circuit has not fully defined the parameters of the "similarly situated" test. Courts addressing this issue, however, have not required identity of circumstances between comparators but rather have held that they must be similar in all "relevant" or "material" respects. See, e.g., McGuinness v. Lincoln Hall, 263 F.3d 49, 53-54 (2d Cir. 2001) (emphasizing that an employee must be similarly situated in all material respects, not all respects); see also Haywood v. Locke, No. 09-1604, 2010 WL 2711294, at *3 (4th Cir. July 6, 2010) (unpublished) ("[P]laintiffs are required to show that they are similar in all relevant respects to their comparator."). Whether certain factors are relevant or material will depend on the context of the case presented, and regardless, "the purpose of the test remains the same: to discern whether there are sufficient common factors between the plaintiff and another employee to allow for a meaningful comparison in order to divine whether discrimination was involved in an employment decision." McGowan v. Deere & Co., 581 F.3d 575, 579-80 (7th Cir. 2009); see Disher v. Weaver, 308 F. Supp. 2d 614, 621 (M.D.N.C. 2004). Further, the court must consider the record as a whole rather than examining one isolated piece of evidence out of context. See Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at

---

[2] The Fourth Circuit has not issued a published case on this point; however, the following unpublished cases have cited with approval the Mitchell decision: Haywood v. Locke, No. 09-1604, 2010 WL 2711294 (4th Cir. July 6, 2010) (unpublished); Forrest v. Transit Mgmt. of Charlotte, Inc., 245 Fed. Appx. 255 (4th Cir. 2007) (unpublished); Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998) (Table); Edwards v. Newport News Shipbuilding & Dry Dock Co., 166 F.3d 1208, 1998 WL 841567, at *3 (4th Cir. 1998) (Table).

*3 (4th Cir. 1998) (Table) ("[T]he district court correctly considered the entire record . . . ."). The *prima facie* case requires that the comparators' conduct be of comparable seriousness as the plaintiff's, although not necessarily the identical offense. See Cook v. CSX Transp. Corp., 988 F.3d 507, 511 (4th Cir. 1993). Furthermore, most courts appear to require that the comparators be subject to the same supervisors. See Heyward v. Monroe, 166 F.3d 332, 1998 WL 841494, at *2 (4th Cir. 1998) (Table). However, "the lack of a common supervisor does not necessarily undermine Plaintiff's prima facie case." Disher, 308 F. Supp. 2d at 621. Rather, the requirement has been interpreted broadly to include instances where employees have different immediate supervisors, but the same ultimate decision maker. See id. (recognizing that the Fourth Circuit has stated that all police officers in a given department can be considered similarly situated for purposes of assignments, promotions, and salary levels) (citing Williams v. Hansen, 326 F.3d 569, 576 (4th Cir. 2003)); Lee v. Kansas City S. Ry. Co., 574 F.3d 253, 260-61 (5th Cir. 2009) (stating that "it is sufficient that the ultimate decisionmaker as to employees' continued employment is the same individual, even if the employees do not share an immediate supervisor"); McMillan v. Castro, 405 F.3d 405 (6th Cir. 2005) (stating that depending on the facts and circumstances of the case, the appropriate requirement may be whether the employee and the comparator "dealt with the same ultimate decision maker, rather than the same supervisor"). A comparator with a different decision maker than the plaintiff's will generally not be a valid one. See Forrest, 245 Fed. Appx. 255; Smith v. Leggett Wire Co., 220 F.3d 752, 762-63 (6th Cir. 2000). Nor will non-supervisory employees usually present an apt comparison to those who hold supervisory positions. Forrest, 245 Fed. Appx. at 257 (holding that two non-supervisory employees were not valid comparators to a supervisory employee because "th[o]se individuals were not subject to the higher standard of performance that was applicable to [the

*PJG*

plaintiff] as a supervisor); see also Lightner, 545 F.3d at 265 (finding that a proffered female police officer comparator was not sufficiently similarly situated to the plaintiff because she was not a division commander or even in the same division as the plaintiff); Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2004) ("Employees in supervisory positions are generally deemed not to be similarly situated to lower level employees."), cited in Brown v. Dir. SCDC, C/A No. 8:08-3761-HFF-BHH, 2010 WL 3167331 (D.S.C. Aug. 5, 2010) (unpublished) (J. Floyd).

Cole presents an array of potential male comparators in support of her claim: (1) Superintendent Andersen, her alleged paramour; (2) Dr. Lee Bollman, the Chief Instructional Officer and Cole's immediate supervisor; (3) Tony Mims, a teacher; (4) Secaida Howell, a principal; (5) Mike Satterfield, a principal; (6) Don Doggett, an assistant principal, and (7) Chris Thoma, a principal. With regard to these purported comparators, the School District contends that they are either not similarly situated to Cole, or that they were not treated disparately.

Specifically, the District argues that Andersen, Bollman, Mims, and Doggett are not similarly situated to Cole because they held positions other than school principal. Under the circumstances presented in this record, the court finds that identity of position is not a relevant consideration for determining whether an employee is a valid comparator. Rather, the case law reveals that the relevant focus is whether the purported comparators hold positions with similar levels of responsibility or authority and whether they work within the same relevant sphere of supervisory control. For example, the Fourth Circuit has held that employees can be valid comparators where they hold "comparable supervisory position[s]." Forrest, 245 Fed. Appx. at 257. Roughly equivalent ranks have been found to be sufficient. Compare McGuinness, 263 F.3d at 54; Forrest, 245 Fed. Appx. at 257 (finding comparator to be valid where he held a



"comparable supervisory position" to the plaintiff's and was therefore subject to the same "higher standard of performance" that was applicable to supervisors rather than non-supervisory employees); Disher, 308 F. Supp. 2d at 621 (recognizing that the Fourth Circuit has stated that all police officers in a given department can be considered similarly situated for purposes of assignments, promotions, and salary levels) (citing Williams v. Hansen, 326 F.3d 569, 576 (4th Cir. 2003)) with Haywood, 2010 WL 2711294, at *3 (finding that a comparator whose immediate supervisor was "three managerial levels above" the plaintiff's did not present a valid comparison). The Fourth Circuit has recognized that in cases of alleged disparate discipline, "the reality [is] that the comparison will never involve precisely the same set of work-related offenses occurring over the same period of time and under the same sets of circumstances." Cook, 988 F.2d at 511. Accordingly, based on the circumstances in this record, the court rejects the District's argument that Andersen, Bollman, and Doggett who all—like Cole—served in supervisory roles within the District such as superintendent, chief instructional officer, and assistant principal, are not valid comparators on the basis that they did not hold precisely the same position as Cole. See Haywood, 2010 WL 2711294, at *3 (holding that comparators need not be an "exact match" but rather must have " 'enough common features . . . to allow [for] a meaningful comparison' ") (quoting Humphries v. CBOCS West, Inc., 474 F.3d 387, 405 (7th Cir. 2007)).

a. **Invalid Comparators**

**Andersen**. The School District also attempts to distinguish Andersen from Cole based on an alleged difference in decision makers. This argument also fails for several reasons. First, the evidence in the record shows that the decisions to deny Cole a severance package and to report her to the State Department of Education were made by the Board—the same decision



maker that authorized Andersen's negotiated departure. Moreover, as discussed below, the record is mysteriously silent as to who the decision maker was regarding the ultimatum demanding Cole's resignation. Accordingly, the District cannot distinguish Andersen as a comparator on this basis.

Finally, the School District argues that Andersen is not a valid comparator based upon his employment contract. The court notes the circumstance presented here of a male comparator who is not only alleged to have engaged in *similar* conduct, but is alleged to have joined the plaintiff in the same alleged misdeeds. Nonetheless, despite this glaring similarity with regard to conduct, the court is constrained to agree with the School District that Andersen's contract distinguishes him from Cole.

The parties appear to agree that, as a school principal, Cole was subject to the statutory standards of the South Carolina Code governing public school teachers. Specifically, S.C. Code Ann. § 59-25-430 provides the grounds for dismissal of teachers. Pertinent here, those grounds include "persistent neglect of duty, willful violation of rules and regulations of district board of trustees, drunkenness, conviction of a violation of the law of [South Carolina] or the United States, gross immorality, dishonesty, [and] illegal use, sale or possession of drugs or narcotics." Id. By contrast, as a superintendent, Andersen had a "professional employment agreement" that provided for termination of the contract upon (a) mutual agreement of the parties; (b) disability of the superintendent; (c) discharge for just cause, including but not limited to unprofessional conduct, neglect of duty, inefficiency, or incompetency; (d) unilateral termination by the Board upon an affirmative vote of five members; or (e) death of the superintendent. (See Professional Employment Agreement § 11, Def.'s Mem. Supp. Mot. Summ. J. Ex. A at 6-7, ECF No. 35-8 at 7-8). Andersen's separation from employment with the District was made pursuant to Section

11(a) of his contract—mutual agreement. (See Settlement Agreement and Mutual Release, ECF No. 41-4 at 3.) Thus, it appears that even though Andersen was alleged to have engaged in the same adulterous relationship and dishonesty as Cole, § 11(a) of his employment contract allowed for him to negotiate more favorable departure terms than the statute permitted for Cole. For that reason, he cannot serve as a valid comparator to Cole with regard to her claim that Andersen was treated more favorably regarding his resignation. As to her claim regarding administrative leave, Cole argues that Andersen did not receive a *letter* placing him on leave, but Cole has presented no evidence refuting the Board Chair's testimony that she instructed Andersen not to come in to work. (Hite Dep. at 31:9-23, ECF No. 35-7 at 11.) Finally, with regard to Cole's contention that Andersen was not immediately reported to the State Department of Education, the governing law on this point requires the superintendent to report certified educators who are separated from employment for certain types of conduct. See S.C. Code Ann. Regs. 43-58.1. Although Andersen testified that he never reported any educator to the State Department of Education—presumably including himself—Cole cannot dispute that both she and Andersen were ultimately reported. (Bain Aff. ¶ 2, 10-11, ECF No. 35-10) (listing educators reported on behalf of the superintendent). Accordingly, the court concludes that Andersen is not a valid comparator for Cole with regard to her claim of disparate discipline.

**Howell**. Secaida Howell is also not a valid comparator to Cole. Cole contends that Howell resigned after allegations of sexual harassment. Even if this alleged conduct could be considered to be of comparable seriousness, Howell's departure occurred in 2005 under a different superintendent.

**Mims**. Cole's evidence regarding Mims is also insufficient to help her establish a *prima facie* case. Although Mims resigned after allegations of theft, which arguably could be



considered to be of comparable seriousness to the dishonesty of which Cole was accused, Mims was not treated differently than Cole, as his resignation was also reported to the State Department of Education, and no evidence suggests that he received more favorable financial treatment when he left the District's employ.

    b.    **Valid Comparators**

**Bollman**. The School District contends that because Bollman was the Chief Instructional Officer who supervised the principals, he is also not a valid comparator to Cole. However, the District makes no showing that Bollman was subject to different standards of conduct than Cole or that his fate was determined by a different decision maker. While the District argues that "there were no allegations of dishonesty or inappropriate relationships with a *supervisor*" regarding Bollman, (Def.'s Mem. Supp. Summ. J., ECF No. 35-1 at 13) (emphasis added), it ignores Cole's evidence that no action was taken against Bollman when rumors arose of an affair between Bollman and an employee who *ranked under him*. Moreover, the only evidence in this record shows that when those rumors resurfaced following the Andersen/Cole allegations, Bollman was not investigated or discharged as Cole was; rather, he was subsequently demoted with no reduction in pay. (See Bollman Dep. at 296:3-300:25, ECF No. 41-5 at 13-17; Bain Aff. ¶ 4, ECF No. 35-10 at 3.) The District has therefore failed to show that Bollman was not similarly situated to Cole in all material respects.

**Satterfield**. Similarly, Satterfield, a principal also alleged to have been having an inappropriate relationship, does not appear to have been disciplined in any way regarding that alleged conduct. (Berg Dep. at 24:18-25:13, ECF No. 41-8 at 10-11.) Although the School District argues that Satterfield is distinguishable because no evidence shows that he was

dishonest about this alleged relationship, for the reasons discussed below, it is far from clear whether dishonesty was the true reason Cole suffered adverse employment actions.

**Doggett and Thoma**. Cole contends that Doggett resigned due to allegations of misconduct including having inappropriate relationships with other employees and that Thoma was changing students' grades. Thus, it appears that both of these men engaged in conduct of comparable seriousness to Cole's alleged inappropriate relationship and dishonesty. Further, the court notes that genuine disputes of material fact appear to exist as to whether Doggett and Thoma were actually disciplined in the same manner as Cole—specifically, whether the conduct of Doggett and Thoma was reported to the State Department of Education. (See, e.g., Bain Aff. ¶ 8, ECF No. 35-10 at 3; Andersen Dep. at 122:13-23, ECF No. 41-3 at 13 (Doggett); see generally Bain Aff. ¶ 9, ECF No. 35-10 at 3; Bollman Dep. at 275:16-24, ECF No. 41-5 at 9. (Thoma)). Accordingly, it appears that Doggett and Thoma can be comparators for purposes of Cole's *prima facie* case.

**D.     Pretext**

The School District also contends that Cole has not established that its proffered legitimate, nondiscriminatory reason for the actions it took against Cole is pretextual. Specifically, the School District claims in its motion that Cole was placed upon administrative leave for being dishonest with the Board about her relationship with Andersen. (Def.'s Mem. Supp. Summ. J., ECF No. 35-1 at 5, 15.) Based on this record, however, the court finds that Cole has presented sufficient evidence from which a reasonable jury could find that the District's proffered explanation is unworthy of credence and is a pretext for unlawful discrimination. See Burdine, 450 U.S. at 256.

PJG

First, a reasonable jury could find that the District's proffered explanation is false. The law in this circuit is clear that it is the perception of the decision maker that matters, and a proffered reason can be legitimate even if it is erroneous, as long as it is genuinely held. See Holland v. Washington Homes, Inc., 487 F.3d 208, 217-18 (4th Cir. 2007) (concluding that no reasonable juror could conclude the decision maker's reason was pretextual where the plaintiff's evidence "failed to address whether [the decision maker] did not honestly believe that the threats were made" and noting that " '[i]t is the perception of the decisionmaker which is relevant.' ") (quoting Tinsley v. First Union Nat'l Bank, 155 F.3d 435 (4th Cir. 1998)). Here, however, the record shows, first, a lack of clarity as to who the decision maker in this case actually was, and, second, a lack of consensus among the individuals involved in the decision as to whether Cole was in fact lying.

With regard to Cole's allegations of a forced resignation,[3] in the record before the court neither Superintendent Berg nor any Board member accepts responsibility for the letter Cole contends forced her to resign or provided in their depositions any explanation—legitimate or not—for that action. (Berg Dep. 20:23-21:4, 22:1-17, ECF No. 41-8 at 6-7, 8.) Consequently, a reasonable jury could find that the District's litigation position that Cole's resignation resulted from her perceived dishonesty to the Board is a belated attempt to justify the District's disparate treatment of her from similarly situated males.

The Fourth Circuit has recognized that shifting, inconsistent explanations of an adverse employment action can be evidence of pretext. See Dennis v. Columbia Colleton Med. Ctr.,

---

[3] Although the School District presents in their memorandum an analysis of the administrative leave as the adverse employment action, as stated above, it does not offer argument or evidence disputing Cole's evidence that she was constructively discharged.

Inc., 290 F.3d 639, 647 (4th Cir. 2002) ("The fact that an employer has offered inconsistent post-hoc explanations for its employment decisions is probative of pretext."); EEOC v. Sears Roebuck & Co., 243 F.3d 846, 852-53 (4th Cir. 2001) ("[T]he fact that Sears has offered different justifications at different times for its failure to hire Santana is, in and of itself, probative of pretext."). The record in this case shows that one Board member, Paula Hite, rejected the notion that Cole was discharged for being dishonest and essentially suggested that Cole was disciplined because of her relationship with Andersen. (Hite Dep. at 44:17-23, ECF No. 41-6 at 5.) At the very least, a jury could reasonably interpret her testimony that way. Another Board member, Edward White, offered no explanation for Cole's alleged forced resignation. (White Dep. at 47:15-22, ECF No. 41-9 at 3.) Moreover, Superintendent Berg, who according to the August 18 letter from the District's attorney was poised to recommend Cole's termination to the Board the very next day, averred in his deposition that at the time of Cole's resignation, the investigation regarding Cole was incomplete and no decision had been made. (See Berg Dep. at 22-23, 29, ECF No. 41-8 at 8-9, 12.) This answer was provided to a specific inquiry seeking evidence of Cole's purported dishonesty. Finally, other Board members testified that the administrative leave and investigation was initiated for perceived "performance issues" and concerns about whether Cole's school would be ready to open. (Hite Dep. at 45, ECF No. 41-6 at 6; Ferrell Dep. at 33, ECF No. 41-10 at 3.) Viewing the record as a whole, the only evidence of Cole's perceived *dishonesty* offered by any witnesses in this record was Bain's discussion of the telephone records between Cole and Andersen. It is not disputed that Cole acknowledged a close personal relationship with Andersen. (See, e.g., Gantt Dep. 26:15-27:8, ECF No. 35-6 at 7-8; Bain Dep. at 54:4-21, ECF No. 41-7 at 5; Hite Dep. at 11:25-12:2, ECF No. 35-7 at 5-6.) While the court does not sit as a kind of super-personnel department to review

an employer's decisions and observes that a decision maker could reasonably disbelieve Cole's assertion that her relationship with Andersen was not an inappropriate one based upon the evidence of the phone records, there is nothing in this record to suggest that anyone who made the decisions regarding Cole actually did so.[4] Rather, they either profess to have been reserving judgment pending the outcome of a then-incomplete investigation, or they aver that Cole was disciplined for reasons other than that currently offered by the District.

The shifting explanations for the various actions taken against Cole constitute evidence that the District's explanations are pretextual. A reasonable jury could find based on this record that Cole was disciplined disparately from similarly situated males because of her gender.

## RECOMMENDATION

Based on the record as a whole, the court finds that Cole has presented sufficient evidence from which a reasonable jury could find that she was the victim of unlawful gender discrimination. See Reeves, 530 U.S. 133; Merritt, 601 F.3d 289. Accordingly, the court recommends that the School District's motion for summary judgment be denied.

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

December 17, 2010
Columbia, South Carolina

*The parties' attention is directed to the important notice on the next page.*

---

[4] There is no evidence in the record that Bain, who was the Chief Human Resources Officer, was the ultimate decision maker with regard to the actions taken against Cole or that she was authorized to discipline Cole in any manner. Rather, the District appears to contend in its filings that such authority is vested in the superintendent and the board. (See Def.'s Mem. Supp. Summ. J. at 9, ECF No. 35-1 at 9; District policy GBN-E, ECF No. 35-5 at 18-20.)

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).